UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 01-1067-CIV-SEITZ

OMAR THOMAS,

    Plaintiff,

vs.

J.R. EIGHT, INC.,

    Defendant.
_____/



## ORDER GRANTING IN-PART AND DENYING IN-PART DEFENDANT J.R. EIGHT, INC.'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER arises out of Plaintiff Omar Thomas' ("Thomas") relatively brief employment relationship with Defendant J.R. Eight, Inc. ("J.R. Eight"). From approximately April through December 2000, Thomas, then an eighteen year old male, worked as a server at J.R. Eight's Johnny Rockets restaurant in Aventura, Florida. Several months after his employment at the restaurant ended, Thomas filed a complaint against J.R. Eight and the Johnny Rockets Group, Inc.[1] for violations of the minimum wage provisions of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"). Specifically, Thomas alleges that because he was forced to share his tips, and was required to purchase his work uniform, his pay was unlawfully reduced below the required $2.13 per hour.[2] He further alleges that because he was not properly informed of the FLSA's "tip credit" provisions, and because he also performed non-tipped work, J.R. Eight was required to pay him the usual minimum wage of $5.15 per hour. J.R. Eight has moved for summary judgment [**D.E. No. 44**], contending that there is no evidence by which Thomas can establish a claim for minimum wage violations under the FLSA. The Court has considered J.R. Eight's motion, Thomas' response, J.R. Eight's

---

[1] On August 27, 2001, the Johnny Rockets Group was dismissed from this action without prejudice.

[2] Although the usual minimum wage is $5.15 per hour, in the case of tipped employees, employers are permitted to treat a portion of an employee's tips as satisfying part of the employer's minimum wage obligations. 29 U.S.C. § 203(m). Thus, under applicable law, an employer may pay an employee $2.13 per hour in wages and credit the remaining $3.02 as tip credit. Id.

reply thereto, the depositions, and the record in this action. For the reasons stated below, Defendant's motion is granted in-part and denied in-part.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

A.   **Thomas' Wage, Hours, and Responsibilities**

From April through December 2000, Thomas worked as a server at the Johnny Rockets restaurant in Aventura, Florida. (Deposition of Omar Thomas ("Thomas Dep.") at 6). As a server, Thomas was paid $2.13 per hour plus any tips he received. (Thomas Dep. at 6-7). He worked approximately five days per week, in shifts lasting approximately six hours and earned an average of $30.00 to $40.00 per weekday in tips. (Thomas Dep., at 67- 68).[3] In addition, Thomas worked approximately three Saturdays per month earning between $75.00 and $100.00 in tips per weekend day. (Thomas Dep. at 49, 67). In total, during an average work week of four weekdays and one weekend day, Thomas earned $63.90 in hourly wages (30 hours multiplied by $2.13 per hour) and approximately $195 in tips,[4] for a total of $258.90. Averaged out over a thirty-hour work week, Thomas' hourly wage equals $8.63, well in excess of the $5.15 per hour legal minimum.

In addition to his responsibilities as a server, Thomas claims that he was forced to market the restaurant around the mall and clean the restaurant after hours, neither of which afforded the opportunity for tips. (Declaration of Omar Thomas ("Thomas Dec."), ¶ 4). Specifically, Thomas walked among the people waiting in line at the movie theater and other parts of the mall, offering sample milk shakes to mall patrons. (Deposition of Michael Clements ("Clements Dep.") at 59-60). Though Defendant asserts that such marketing projects were undertaken on a purely volunteer basis, Thomas alleges that his manager made it

---

[3] Towards the end of his employment at Johnny Rockets, Thomas earned an estimated $15.00 per weekday in tips.

[4] Four weekdays worth of tips is approximately $120, plus one weekend day of $75 in tips, equals $195.

a job requirement. (Thomas Dep. at 37-38). Thomas performed such marketing for approximately one month of his total employment at the restaurant, receiving his usual $2.13 per hour. (Id.). Thomas also worked night shifts about four times a week, where he was required to assist in the cleaning of the restaurant after closing hours. (Thomas Dep. at 36, 51). The cleaning took approximately two to three hours, during which time he was also paid the usual $2.13 per hour.

### B. Uniforms

As a condition of working at the restaurant, Thomas was required to wear a 1950's soda shop costume. (Thomas Dep. at 7). Specifically, Thomas was required to wear: plain khaki pants, white dress shirt, non-skid black shoes, apron with Johnny Rockets logo, 1950's style hat, metal button, and a black bow tie. With respect to the pants, shirt, and shoes, Thomas was permitted to buy any brand of his choosing, so long as they fit the generic requirements. With respect to the apron, pin, hat, and tie, the restaurant provided one of each, and any replacements were to be purchased by the employee.

Thomas alleges that he paid $253.00 towards his uniform.[5] He further alleges that because he was required to have his uniform clean and pressed, he incurred $184.50 in laundry and pressing charges. (Thomas Dec., ¶ 14). J.R. Eight maintains that all items worn by Thomas were able to be washed with the rest of his laundry and thus no additional cleaning charges should have been incurred.

### C. Tip Credit Notice

Prior to his first day at the restaurant, Thomas was informed that he would be paid an hourly wage of $2.13 plus tips. (Thomas Dep. at 6-7). In addition, J.R. Eight maintains that during the entirety of Thomas' employment, there was a labor poster, prominently displayed in the restaurant, explaining the tip

---

[5] Specifically, Thomas bought: 3 pairs of khaki pants at $18.00 each ($54.00); four shirts at $14.00 each ($56.00); 2 pair of shoes at $12.00 each ($24.00); six aprons at $13.00 each ($98.00); two hats at $5.00 each ($10.00); five pins at $3.00 each ($15.00); and four bow ties at $4.00 each ($16.00). (Thomas Dec., ¶ 11).

credit provision of the FLSA. Thomas, however, contends that, with the exception of a poster requiring employees to show up to work in costume, there were no labor posters anywhere in the restaurant. (Thomas Dec., ¶ 7). He further contends that at no time was he specifically informed of the FLSA's tip credit provisions. (Thomas Dec., ¶ 5).[6]

### D. Tip Sharing

Thomas alleges that Kathy Hurley ("Hurley"), the restaurant's manager, required him to "tip out" the cook. (Thomas Dep. at 61). In other words, at the end of his shift, Thomas would share some of the tips he received with the cook. According to Thomas, during the period where he was required to "tip out" the cook, he paid the cook a total of $37.00. While Thomas maintains that such practice was widely known and implicitly condoned by management at the restaurant, J.R. Eight maintains that it neither knew of the practice, nor encouraged it. At the very least, J.R. Eight maintains, and Thomas concedes in his deposition, that there was no official policy to have servers share tips with the cooks. (Thomas Dep. at 57-59). Moreover, based on Thomas' deposition testimony, it appears that his tip sharing lasted no more than one month. (Thomas Dep. at 61).

---

[6] Thomas' contentions in his recently filed affidavit contradict much of his deposition testimony on this issue. Indeed, Thomas admitted during his deposition that a labor poster was hanging in the restaurant while he worked there, and that he was "sure" it contained information regarding tips. (Thomas Dep. at 83-84). Thus, because Thomas had an opportunity to review his deposition, did not file the submission for changes within the requisite (30) days and did not explain that statements in Thomas' deposition were made in error thus requiring the need for Thomas' affidavit, Thomas has waived his right to change his deposition testimony. Accordingly, where Thomas' deposition contradicts his affidavit, the deposition testimony will control. See Van T. Junkins and Associates, Inc. v. U.S. Industries, 736 F.2d 656, 65 (11th Cir. 1984) ("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."); see also Mack v. United States, 814 F.2d 120, 124 (2d Cir. 1987) ("It is well settled. . . .that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment"); Russell v. Acme-Evans Co., 51 F.3d 64, 68 (7th Cir. 1995) ("Where deposition and affidavit are in conflict, the affidavit is to be disregarded unless it is demonstrable that the statement in the deposition was mistaken, perhaps because the questions was phrased in a confusing manner or because a lapse in memory is in the circumstances a plausible explanation for the discrepancy").

## II. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate when "the pleadings ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Accepting this evidence as truthful, the Court must view the record and all factual inferences therefrom in the light most favorable to the non-moving party and decide whether "'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Anderson, 477 U.S. at 251-52).

### B. Fair Labor Standards Act

The minimum wage is $5.15 per hour. 29 U.S.C. § 206 (a)(1). Congress, however, has provided an exception to the minimum wage requirement for employers of "tipped employees."[7] See 29 U.S.C. § 203(m). Specifically, the FLSA permits employers to take a tip credit against the wages of a tipped employee by paying them a slightly lower hourly wage, provided that "such employee has been informed by the employer of the provisions of [the law] and ... all tips received by such employee have been retained by the employee." 29 U.S.C. § 203(m). With this legal framework as a backdrop, J.R. Eight's motion presents the following issues: (1) whether Thomas received adequate notice of the FLSA's tip credit provisions; (2) whether Thomas was lawfully compensated for performing certain non-tipped work; (3) whether Thomas was unlawfully required to share his tips; and (4) whether Thomas should be reimbursed for his uniform purchase and

---

[7] A "tipped employee" is defined as an employee involved in an occupation where he/she customarily receives at least $30 per month in tips. 29 U.S.C. § 203(t).

cleaning costs. With respect to the first three issues, J.R. Eight is entitled to summary judgment. With respect to the remaining issue of uniform costs, there is a genuine issue of material fact that requires the Court to deny summary judgment.

1. <u>Tip Credit Notice</u>

The employer must inform the employee of its intent to take a tip credit. <u>Kilgore v. Outback Steakhouse of Florida, Inc.</u>, 160 F. 3d 294, 298 (6th Cir. 1998) (citing <u>Martin v. Tango's Restaurant, Inc.</u>, 969 F.2d 1319, 1322 (1st Cir. 1992) (citations omitted). In order to satisfy this notice requirement, an employer does not necessarily have to explain the tip credit procedure. <u>Davis v. B&S, Inc.</u>, 38 F.Supp.2d 707, 719 (N.D. Ind. 1998). Rather, the employer need only "inform" its employees that it intends to "treat tips as satisfying part of the employer's minimum wage obligations." <u>Id.</u> (citations omitted). However, "[i]f the employer cannot show that it has informed employees that tips are being credited against their wages, then no tip credit can be taken and the employer is liable for the full minimum-wage." <u>Reich v. Chez Robert, Inc.</u>, 28 F.3d 401, 403 (3d Cir. 1994) (citing <u>Martin v. Tango's Restaurant, Inc.</u>, 969 F.2d 1319, 1322-23 (1st Cir. 1992); <u>see</u> <u>also</u> <u>Kilgore</u>,160 F.3d at 298-300 (concluding that where employer does not demonstrate that notice was given to a tipped employee regarding use of the tip credit, summary judgment as to the tip credit notice will be denied to the employer).

Thomas received adequate notice of the tip credit. A plaintiff cannot avoid summary judgment by artificially creating a disputed issue of fact. Thus, as stated above, it is undisputed that not only was Thomas told from the outset that he would be paid $2.13 per hour plus tips, but Defendant also prominently displayed a poster in the restaurant conveying notice of the tip credit to all employees. Such constitutes adequate notice of the tip credit and thus summary judgment is appropriate on this issue.

2.  Non-Tipped Work

Both parties agree that Thomas performed certain non-tipped work, including cleaning and marketing. Thomas, however, is not asserting that he was not paid at all for such non-tipped work. Rather, Thomas maintains that he should have received the full minimum wage of $5.15 per hour for time spent performing non-tipped work, instead of the tip credit adjusted $2.13 per hour. Therefore, Thomas alleges that he was underpaid in the amount of $3.02 per hour for all time spent performing non-tipped work.

As a matter of law, an employee cannot succeed on a minimum wage claim under the FLSA if his average wage for a period exceeds the legal minimum, in this case, $5.15 per hour. See Bolick v. Brevard County Sheriff's Department, 937 F.Supp. 1560, 1568 (M.D. Fla. 1996) (citations omitted). Here, even with the non-tipped work, Thomas' average hourly wage of $8.63 exceeds the minimum wage. Moreover, Thomas has presented no documentary evidence to demonstrate that he performed work for which he was not properly compensated. Therefore, having found there to be no disputed issues of fact with respect to this issue, the Court will grant summary judgment in favor of Defendant.

3.  Tip Sharing

An employer violates the FLSA and loses the protection of the tip-credit provision when it requires a tipped employee to share tips with a non-tipped employee. 29 U.S.C. § 203(m). However, in order to succeed on this claim, a plaintiff must establish that there was a clear practice and/or policy in place regarding the sharing of tips. See, e.g., Myers v. Copper Cellar Corp., 192 F.3d 546, 548 (6th Cir. 1999). Here, although Thomas was allegedly required by his manager to share tips with the cook,[8] such was not the stated policy or practice of J.R. Eight. In fact, Thomas admitted that such tip sharing was not mandatory and that besides the one cook for that one month period, he was never required to share tips with anyone else. The record clearly demonstrates that tip sharing was contrary to established practice and policy at Defendant's restaurant.

---

[8] Cooks in restaurants are considered non-tipped employees because they do not have significant interaction with diners and do not customary receive tips. 29 U.S.C. § 203(t).

Moreover, based upon Thomas' deposition testimony, Thomas was well aware of the stated policy. Thus, since there are no disputed issues of fact, Defendant is entitled to summary judgment on the tip-sharing claim.

### 4. Uniforms

Thomas alleges that J.R. Eight violated FLSA by requiring him to purchase a uniform without reimbursement, and by requiring him to pay for the cleaning, pressing and repair of such uniform. (Complaint at 4-5). Federal law requires employers to compensate employees for the purchase and maintenance of required uniforms if the employees' expenditures for these purposes would reduce their wages to below minimum wage. See Ayres v. 127 Restaurant Corp., 12 F.Supp.2d 305 (S.D.N.Y. 1998); Brennan v. Haulover Shark & Tarpon Club, Inc., 1986 WL 587, *16 (S.D. Fla. 1986). Although the term "uniform" is not expressly defined under federal law, the U.S. Department of Labor has suggested certain guiding principles:

> If an employer merely prescribes a general type of ordinary basic street clothing to be worn while working and permits variations in details of dress the garments chosen would not be considered to be uniforms.... On the other hand, where the employer does prescribe a specific type and style of clothing to be worn at work, e.g., where a restaurant or hotel requires a tuxedo or a skirt and blouse or jacket of a specific or distinctive style, color, or quality, such clothing would be considered uniforms.

Department of Labor's Wage & Hour Field Operations Handbook § 30c12(f).

The Court finds there to be a disputed issue of fact as to whether the items purchased and cleaned by Thomas constitute a uniform. On this record, a reasonable juror could conclude that Thomas' required outfit does constitute a uniform. Although most of the articles of clothing at issue arguably may be worn as part of an employee's ordinary wardrobe, and no specific brands are mandated, specific colors are required (black shoes, khaki pants, and white shirts), cleaning costs for these items are imposed on the employees, and in Thomas' case, he had to purchase some or all of these items with his own funds. Defendant, in short, is not entitled to summary judgment on the uniform claims, as genuine issues of fact exist for trial.

For these reasons, it is

ORDERED that Defendant's Motion for Summary Judgment is GRANTED in-part and DENIED

in-part. The sole issue remaining for trial, in addition to damages, is whether the items purchased and cleaned by Thomas constitute a uniform and whether such costs reduced his wage below the legal minimum.

DONE AND ORDERED in Miami, Florida, this 29 day of August, 2002.

_____
PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

Copies to:
Lawrence J. McGuinness, Esq., 782 NW Le Jeune Rd., Suite 350, Miami, FL 33126  Fax: 305-445-5550
Jorge O. Diaz-Cueto, Esq., 169 E. Flagler Street, Suite 1527, Miami, FL 33131  Fax: 305-381-9194
Roberto Zarco, Esq., Zarco & Pardo, 100 SE 2nd Street, 27th Floor, Miami, FL 33131 Fax: 305-374-5428.